1    Stuart M. Richter (CA 126231)
     stuart.richter@kattenlaw.com
2    Gregory S. Korman (CA 216931)
     greg.korman@kattenlaw.com
3    Andrew J. Demko (CA 247320)
     andrew.demko@kattenlaw.com
4    Courtnee A. Draper (CA 298921)
     courtnee.draper@kattenlaw.com
5    **KATTEN MUCHIN ROSENMAN LLP**
     2029 Century Park East, Suite 2600
6    Los Angeles, CA  90067-3012
     Telephone:  310.788.4400
7    Facsimile:   310.788.4471

8    Attorneys for Defendant
     NISSIN FOODS (U.S.A.) CO., INC.
9
                    **UNITED STATES DISTRICT COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11
                    **SAN FRANCISCO DIVISION**
12

13   VICTOR GUTTMANN, on behalf          Case No.4:15-cv-00567-WHA
     of himself and all others similarly
14   situated,                          **DEFENDANT'S NOTICE OF MOTION
                                        AND MOTION TO DISMISS CLASS
15            Plaintiff,                 ACTION COMPLAINT PURSUANT TO
                                        RULES 12(B)(1) AND 12(B)(6);
16       v.                             MEMORANDUM OF POINTS AND
                                        AUTHORITIES**
17   NISSIN FOODS (U.S.A.)
     COMPANY, INC.,
18                                       Hearing Date: April 23, 2015
             Defendant.                  Time: 8:00 a.m.
19                                       Place: Courtroom 8 – 19th Floor
                                         Judge: Hon. William Alsup
20
                                         [Filed Concurrently with Proposed Order,
21                                       Request for Judicial Notice, and Declaration
                                         of Linda Chung]
22

23

24

25

26

27

28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 23, 2015, at 8:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Nissin Foods (U.S.A.) Co., Inc. ("Nissin Foods") will and does move the Court for an order dismissing Plaintiff Victor Guttmann's Complaint, and each claim contained therein, without leave to amend.

<b>STATEMENT OF RELIEF SOUGHT BY NISSIN FOODS</b>

Through this Motion, as supported by the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and declaration of Linda Chung, the court records and files in this action, and on such other argument and evidence as may be presented to the Court at or prior to the hearing on this Motion, Nissin Foods seeks dismissal of Guttmann's Complaint, in its entirety, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

DATED: March 19, 2015          Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**
Stuart M. Richter
Gregory S. Korman
Andrew J. Demko
Courtnee A. Draper

By: _____/s/_____
          Stuart M. Richter
Attorneys for Defendant,
Nissin Foods (U.S.A.) Co., Inc.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# TABLE OF CONTENTS

**PAGE**

I.    STATEMENT OF THE ISSUES TO BE DECIDED ...................................1

    A.    Does Guttmann Have Article III Standing?.....................................1

    B.    Does Guttmann State A Claim Under The "Unfair" Prong of California's Unfair Competition Law ("UCL")? ................................1

    C.    Does Guttmann State A Claim For Public Nuisance Under Cal. Civ. Code § 3493?.......................................................................1

    D.    Does Guttmann State A Claim For Breach of Implied Warranty of Merchantability? ...................................................................2

II.   SUCCINCT STATEMENT OF THE RELEVANT FACTS .......................2

III.  ARGUMENT AND CITATION TO PERTINENT AUTHORITIES ...........4

    A.    Introduction. ..........................................................................4

    B.    Legal Standard. ......................................................................6

        1.    Rule 12(b)(1) ...............................................................6

        2.    Rule 12(b)(6) ...............................................................7

    C.    Guttmann Lacks Article III Standing Because He Was Not Injured By Nissin Foods' Use Of TFAs. ....................................7

        1.    Guttmann Fails To Show An Increased Risk Of Harm From Exposure To A Dangerous Substance............................7

        2.    Any Increased Risk Of Harm Or Financial Loss Was Not Caused By Nissin Foods' Supposed Unlawful Conduct. ...........9

        3.    Guttmann's Extensive Knowledge Of TFAs Also Means He Lacks Standing For Injunctive Relief................................10

    D.    Guttmann Cannot State A Claim Under The "Unfair" Prong Of The UCL For Several Reasons. .......................................................11

        1.    Guttmann Caused His Own Purported Injury.........................11

        2.    Guttmann Could Have (Easily) Avoided Consuming TFAs. ..........................................................................12

        3.    Guttmann Cannot State An "Unfair" Prong Claim Because Federal Law Permits the Use of TFAs in Nissin Foods' Products.......................................................13

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

i

E.    Guttmann Cannot State A Public Nuisance Claim Because He Was Not Specifically Injured, TFAs Are Permitted By Law, And This Claim Is A Miscast Products Liability Claim. ................15

    1.    Guttmann Cannot Meet The Special Injury Element Because His Alleged Injury Is The Same As Everyone Else Who Purchased The Instant Noodles. ...........................15

    2.    Because TFAs Are Authorized By Statute, Their Use Cannot Be A Nuisance. ..........................................16

    3.    Guttmann Asserts A Flawed Products Liability Claim Disguised As A Public Nuisance Claim. ................................16

F.    Guttmann Cannot State A Claim For Breach Of The Implied Warranty Of Merchantability Because The Instant Noodles Conformed To Their Labels And Guttmann Knew They Contained TFAs. ...........................................................17

IV.    CONCLUSION. ........................................................19

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
    300 F.R.D. 444 (S.D. Cal. 2014) ..................................................................11

*Animal Legal Defense Fund v. U.S. Dep't. of Agric.*,
    No. 2:12–cv–4028, 2013 WL 1191736 (C.D. Cal. Mar. 22, 2013) ........................6

*Aron v. U-Haul Co. of Cal.*,
    143 Cal. App. 4th 796 (2006) ...............................................................11, 13

*Arroyo v. Chattem, Inc.*,
    926 F. Supp. 2d 1070 (N.D. Cal. 2012).......................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................6, 7

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ..............................................................17, 18

*Boysen v. Walgreen Co.*,
    No. C 11–06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ..........................9

*Camacho v. Auto. Club of S. Cal.*,
    142 Cal. App. 4th 1394 (2006) ...............................................................12

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1990) ..........................................................................13

*City of San Diego v. U.S. Gypsum Co.*,
    30 Cal. App. 4th 575 (1994) ...................................................................17

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)..........................................................................10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. (2006)....................................................................................6

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) .................................................................. 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000).................................................................................. 6

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
  No. 13-cv-05222, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ............. 11

*Gregory Vill. Partners, L.P., v. Chevron U.S.A., Inc.*,
  805 F. Supp. 2d 888 (N.D. Cal. 2011).................................................... 15

*Guttmann v. Ole Mexican Foods, Inc.*,
  No. 4:14-cv-04845, Doc. No. 1 at ¶¶ 6, 19  (N.D. Cal. Oct. 31, 2014 ..... 3

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (2008) .................................................................. 11

*Ham v. Hain Celestial Grp., Inc.*,
  No. 14-cv-02044, 2014 WL 4965959 (N.D. Cal. Oct. 3, 2014)............... 11

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  No. C 09–1597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ......... 6, 7, 8

*Hicks v. Kaufman and Broad Home Corp.*,
  89 Cal. App. 4th 908 (2001) .................................................................... 18

*Hinds Invs., L.P. v. Angioli*,
  445 Fed. Appx. 917 (9th Cir. 2011) ........................................................ 16

*Hoyte v. Yum! Brands, Inc.*,
  489 F. Supp. 2d 24 (D.D.C. 2007)........................................................... 18

*In re Quaker Oats Labeling Litigation*,
  No. 5:10-cv-00502, Doc. No. 1 at ¶¶ 20, 25, 30 (N.D. Cal. Feb. 3,
  2010) .......................................................................................................... 3

*Institoris v. City of Los Angeles*,
  210 Cal. App. 3d 10 (1989) ..................................................................... 15

*Johnson v. Mars, Inc.*,
  No. 08-cv-351, 2008 WL 2777063 (W.D. Wis. July 14, 2008)............... 18

*Kane v. Chobani, Inc.*,
  No. 12-cv-02425, 2013 WL 3776172 (N.D. Cal. July 15, 2013)............. 15

iv

NOTICE OF MOTION AND MOTION TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Koronthaly v. L'Oreal, USA, Inc.*,
    No. 07-cv-5588, 2008 WL 2938045 (D.N.J. July 29, 2008) ................................ 8

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382 (2005) .......................................................................... 13

*Medley v. Johnson and Johnson Consumer Cos., Inc.*,
    No. 10–cv–02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011) ............................... 9

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (2003) ............................................................................ 17

*Modesto Redevelopment Agency v. Supr. Ct.*,
    119 Cal. App. 4th 28 (2004) .............................................................................. 16

*Morgan v. Wallaby Yogurt Co.*,
    No. 13-cv-00296, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ........................ 10

*Peviani v. Hostess Brands*,
    No. 2:10-cv-2303, Doc. No. 1 at ¶¶ 8, 27, 30 (C.D. Cal. Mar. 30,
    2010) .................................................................................................................... 3

*POM Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct.
    2228 (2014) ........................................................................................................ 11

*Roberts v. Corrothers*,
    812 F.2d 1173 (9th Cir. 1987) ............................................................................. 6

*Simpson v. California Pizza Kitchen, Inc.*,
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ....................................................... *passim*

*Takhar v. Kessler*,
    76 F.3d 995 (9th Cir. 1996) ................................................................................. 6

**Statutes**

21 U.S.C. § 301 ............................................................................................................ 13

21 U.S.C. § 321(s) ........................................................................................................ 13

21 U.S.C. § 451 ............................................................................................................ 13

21 U.S.C. § 601 ............................................................................................................ 13

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

Cal. Bus. & Prof. Code §§ 17204, 17535 ........................................................ 11

Cal. Code Civ. Proc. § 1791.1 ........................................................................ 17

Cal. Code Civ. Proc. § 3480 ........................................................................... 15

Cal. Code Civ. Proc. § 3482 ........................................................................... 16

Cal. Code Civ. Proc. § 3493 ....................................................................... 1, 15

Cal. Com. Code § 2313(1)(b) ......................................................................... 17

Cal. Com. Code § 2314 ................................................................................... 17

Cal. Com. Code § 2316 ............................................................................. 17, 18

California's Unfair Competition Law ................................................................. 1

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .................................................................................... 7

**Regulations**

9 C.F.R. § 319.702 (b) (1978) ...................................................................... 2, 13

21 C.F.R. 101.9(c)(2)(ii) (1993) ..................................................................... 14

21 C.F.R. § 101.9(c) at 24 (1993) .................................................................... 2

21 C.F.R. § 101.9(d)(11) & (12) (1993) ......................................................... 14

21 C.F.R. § 170.30(c)(1) (1993) ..................................................................... 13

21 C.F.R. §§ 184.1555(c)(2), 184.1472(b) .................................................... 13

**Other Authorities**

Article III of the United States Constitution .............................................*passim*

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

### A.   Does Guttmann Have Article III Standing?

Did plaintiff Victor Guttmann allege an Article III injury in fact by buying and consuming Nissin Foods' instant noodles products (the "Instant Noodles") that contained artificial trans fatty acids ("TFAs"), where he has known about the supposed dangers of TFAs for more than four years *before* he filed this lawsuit? Guttmann has been filing virtually identical cases against other food manufacturers *since 2010*, alleging, as he does here, that he bought and/or consumed products with TFAs and that TFAs pose health risks when consumed in any quantity.  In light of Guttmann's litigation history, can he manufacture standing by buying a product that he believes will harm him?

### B.   Does Guttmann State A Claim Under The "Unfair" Prong of California's Unfair Competition Law ("UCL")?

This question requires resolution of two issues.  First, does Guttmann have standing under Proposition 64 to bring an "unlawful" prong claim when he knew that some of Nissin Foods' products contained TFAs, that TFAs allegedly have adverse health effects, that there were other, similar products that did not contain TFAs and, by his own admission in multiple other cases, Guttmann has been consuming various food products with TFAs for many years?  Second, does Guttmann state a claim for violation of the "unfair" prong where the use of TFAs in Nissin Foods' products was fully disclosed, lawful and easily avoidable, particularly to someone who has been filing lawsuits alleging that TFAs are harmful for the past several years?

### C.   Does Guttmann State A Claim For Public Nuisance Under Cal. Civ. Code § 3493?

Does Guttmann state a claim for public nuisance if: (a) he does not allege any special injury to himself; (b) the use of TFAs was lawful; and (c) his nuisance

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1

claim sounds in products liability, not nuisance, because the claim is premised on products containing an allegedly hazardous substance?

### D.   Does Guttmann State A Claim For Breach of Implied Warranty of Merchantability?

Does Guttmann state a claim for breach of implied warranty of merchantability if Nissin Foods' products are deemed safe by the Food and Drug Administration ("FDA") and United States Department of Agriculture ("USDA") and the presence of TFAs was apparent to Guttmann on the labels of the products he purchased?

## II.   SUCCINCT STATEMENT OF THE RELEVANT FACTS

Guttmann alleges that "dozens of times over the past three years" he purchased the "Instant Noodles" that contained TFAs.[1]   Guttmann claims the Instant Noodles contain partially hydrogenated oil ("PHO"), the source of the TFAs, which supposedly causes an increased risk of "heart disease, diabetes, cancer, Alzheimer's disease, and accelerates cognitive decline in diabetics." Compl. ¶¶ 4, 14, 56, 69.   Guttmann alleges that simply using TFAs as an ingredient is actionable conduct.   *See id*. ¶¶ 6-7.   Guttmann then lists legislative and regulatory measures addressing TFAs in local communities in the United States and elsewhere.   *Id*. ¶¶ 21-26.   But he does not allege that those measures apply to his claims, and he ignores that both the FDA and the USDA *specifically permit* the use of TFAs in packaged food products, such as the Instant Noodles, as long as they are properly disclosed.   *See* 21 C.F.R. § 101.9(c) at 24 (1993); 9 C.F.R. § 319.702 (b) (1978).

Guttmann does not allege he suffered actual physical injury, nor any negative health effects, as a result of his purchases.   His sole alleged injury is that had "Defendant not violated the law, [he] would not have been able to purchase"

---

[1]       Guttmann challenges 12 different instant noodle products.   Compl. App'x A (Dkt. 1).

Katten
KattenMuchinRosenmanllp
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

2

the Instant Noodles, "or would have only been able to purchase Nissin instant

noodle varieties containing safe alternatives to PHO and trans fat."  Compl. ¶ 67.

Guttmann says he "could not have discovered earlier Defendant's unlawful

acts . . . because the dangers of artificial trans fats were known to Defendant, but

not to Plaintiff, throughout the Class Period defined herein [on or after January 1,

2008] . . . including that they [TFAs] necessarily exist where partially

hydrogenated oil is used as an ingredient in a food product."  *Id.* ¶¶ 70, 72.  These

allegations are flatly contradicted by his allegations in prior cases.  Beginning in

early 2010, Guttmann filed three class actions, nearly identical to this one, in

which he asserted the adverse health effects of TFAs in packaged foods.  *See*

RJN, Exh. 13 *(In re Quaker Oats Labeling Litigation,* No. 5:10-cv-00502, Doc.

No. 1 at ¶¶ 20, 25, 30 (N.D. Cal. Feb. 3, 2010) (claiming that "[n]early all the

trans fat in the U.S. diet is the artificial fat present in partially hydrogenated

vegetable oil," citing to the *same* research findings alleged in the Complaint here,

and concluding that "[t]rans fat causes cardiovascular disease, type 2 diabetes,

and cancer" and coronary heart disease)); *id.*, Exh. 14 (*Peviani v. Hostess Brands*,

No. 2:10-cv-2303, Doc. No. 1 at ¶¶ 8, 27, 30 (C.D. Cal. Mar. 30, 2010) (alleging

"[a]rtificial trans fat is manufactured in an industrial process called partial

hydrogenation . . . the resulting product is known as partially hydrogenated oil"

which "causes type 2 diabetes" and "causes breast, prostate, and colorectal

cancer," and has been attributed to obesity, liver dysfunction, Alzheimer's

disease, and female infertility)); *id.*, Exh. 15 (*Guttmann v. Ole Mexican Foods,*

*Inc.*, No. 3:14-cv-04845, Doc. No. 1 at ¶¶ 6, 19 (N.D. Cal. Oct. 31, 2014)

(alleging partially hydrogenated vegetable oil "is a food additive" containing

"artificial trans fat . . . a toxic carcinogen" which "causes cardiovascular heart

disease, diabetes, cancer, Alzheimer's disease, and accelerates cognitive decline

in diabetics.")).  In each of these lawsuits, Guttmann alleges the supposed health

NOTICE OF MOTION AND MOTION TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   risks of TFAs *and* that he has been consuming and continues to consume multiple

2   food products containing TFAs.

3   **III.   ARGUMENT AND CITATION TO PERTINENT AUTHORITIES**

4   **A.   Introduction.**

5        The threshold problem with Guttmann's complaint is that he lacks standing

6   under Article III and the UCL.  He has not plausibly alleged how he was injured

7   by Nissin Foods' use of TFAs.  No one could, because TFAs are legal under FDA

8   and USDA guidelines, their presence is disclosed on the Instant Noodles labels,

9   and there were plenty of alternative products on the market without TFAs.  But

10   Guttmann particularly cannot allege an injury traceable to the Instant Noodles,

11   because he started filing lawsuits about TFAs in food at least four years ago.  This

12   means Guttmann knew TFAs were supposedly risky, knew some Instant Noodle

13   products contained TFAs and others did not, and chose to buy the Instant Noodle

14   products with TFAs anyway.

15        It is safe to conclude that Guttmann is not just uninjured, he is attempting to

16   improperly manufacture standing.  He cannot allege he was injured *because of*

17   Nissin Foods' use of TFAs; if anything, he chose to consume them in lieu of

18   available non-TFA alternatives, including alternatives offered by Nissin Foods.

19   And, because Guttmann has consumed many products over the years that contain

20   TFAs, he can never allege that the Instant Noodles—as opposed to some other

21   product he ate—caused his harm.  The Court should dismiss the Complaint on

22   standing grounds alone.

23        On the merits, Guttmann's claims all fail because, as he admits, the

24   ingredients in the Instant Noodles products were consistent with their labeling and

25   complied with state and federal law.  The FDA and USDA have declared that

26   TFAs are "Generally Recognized as Safe" ("GRAS").  TFAs are not illegal, and

27   they are not banned; they just have to be disclosed along with other product

28   ingredients.  Guttmann admits, and there is no allegation to the contrary, that

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

4

Nissin Foods complied with the FDA's and USDA's disclosure requirements on its product labels. Nissin Foods' compliance with federal law negates all three of Guttmann's claims.

Other specific defects plague each claim. Guttmann's unfair-prong claim under the UCL fails because he knew, based on the product labels, that the Instant Noodles contained TFAs, and he admits that there were many alternative products that he could have purchased that did not contain TFAs. His nuisance claim fails because he cannot allege the element of a special, individual injury; he instead affirmatively alleges that he and everyone else suffered the exact same injury. And moreover, his nuisance claim is really a defective products liability claim in disguise, which is not allowed. Finally, Guttmann's breach of implied warranty claim fails because the Instant Noodles were merchantable, and he knew exactly what ingredients they contained from their labels.[2]

This is not the first time Guttmann's counsel has tried and failed to assert these claims. A district court in the Southern District recently dismissed identical claims for many of the same reasons. *See Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015 (S.D. Cal. 2013) (holding plaintiff lacked Article III standing, and alternatively dismissing the nuisance claim for failure to allege a special injury, dismissing the UCL claim because plaintiff could have avoided her injury, and disclosing the breach of implied warranty claim because the contested pizzas' labels disclosed their TFAs content).

In short, this case is an improper attempt to have this Court prevent the sale and consumption of food products that Guttmann and his counsel consider "unhealthy." Like the court in *Simpson*, this Court should decline to make such a sweeping determination. Guttmann's complaint should be dismissed with prejudice now, "at the point of minimum expenditure of time and money by the

---

[2]    The labels for the Instant Noodles products identified in the Complaint are attached to the concurrently filed Request for Judicial Notice as Exhibits 1 through 12.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

2    Guttmann is free to challenge the legality of TFAs with the FDA and the USDA,

3    which, unlike the Court, are the proper fora to challenge regulatory policy.

4    *Animal Legal Defense Fund v. U.S. Dep't. of Agric.*, No. 2:12–cv–4028, 2013 WL

5    1191736, at *3 (C.D. Cal. Mar. 22, 2013) (the "Court leaves this scientific

6    conclusion," *i.e.*, banning force-fed foie gras as an adulterated food due to risks to

7    human health, "for the USDA to decide based on its expertise in the field.").

8    Respectfully, the motion should be granted.

9        **B.    Legal Standard.**

10           **1.    Rule 12(b)(1)**

11       Federal courts must dismiss claims over which they lack subject-matter

12   jurisdiction under Article III of the Constitution.  *See Herrington v. Johnson &*

13   *Johnson Consumer Cos., Inc.*, No. C 09–1597, 2010 WL 3448531, at *2 (N.D.

14   Cal. Sep. 1, 2010); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

15   Guttmann bears the burden of establishing that he has Article III standing.

16   *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996).  To meet his burden, he

17   must allege: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and

18   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

19   injury is fairly traceable to the challenged action of the defendant; and (3) it is

20   likely, as opposed to merely speculative, that the injury will be redressed by a

21   favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528

22   U.S. 167, 180-81 (2000).  The Constitution's standing requirement "seeks to limit

23   the reach of the judiciary into matters properly reserved for other branches of

24   government and to maintain the critical balance of power at the heart of the

25   tripartite government established by the Constitution."  *Simpson*, 989 F. Supp. 2d

26   at 1022 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 341 (2006)).  By

27   attempting to ban TFAs through litigation, Guttmann's claims breach these

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

6

1  Constitutional boundaries and invade the realms of the legislative and executive

2  (regulatory) branches of the state and federal governments.

3       **2.**    **Rule 12(b)(6)**

4       Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a complaint

5  does not contain sufficient facts to state a plausible claim for relief. *Twombly*,

6  550 U.S. at 570. A "claim" means a set of facts that, if established, entitles the

7  pleader to relief. *Id.* at 555. A claim is plausible "when the plaintiff pleads

8  factual content that allows the court to draw the reasonable inference that the

9  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

10  678 (2009).

11     **C.**   **Guttmann Lacks Article III Standing Because He Was Not**

12              **Injured By Nissin Foods' Use Of TFAs.**

13       Guttmann has not suffered a concrete and particularized injury in fact that

14  was caused by Nissin Foods' conduct. To have standing in cases involving

15  allegations of contaminated foods, the plaintiff must demonstrate either: "(1) the

16  increased risk of harm from exposure to a dangerous substance, [or] (2) the

17  financial loss from purchasing a product in reliance on false or misleading

18  information." *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1076 (N.D. Cal.

19  2012). Guttmann has established neither.

20       **1.**    **Guttmann Fails To Show An Increased Risk Of Harm From**

21              **Exposure To A Dangerous Substance.**

22       To allege an increased risk of harm from exposure to a dangerous

23  substance, there must be "a credible or substantial threat to [the plaintiff's]

24  health . . . ." *Herrington*, 2010 WL 3448531, at *3. Guttmann has not met and

25  cannot meet this requirement. While he does allege a variety of health *risks*

26  purportedly associated with TFAs (Compl. ¶¶ 27, 37-54, 68), he does not allege

27  that the amounts of TFAs in Nissin Foods' products have caused or credibly

28  threatened to cause him harm.

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Guttmann does not allege he experienced any actual, specific negative effect on his health from consumption of the TFAs in Nissin Foods' products. Even if he had alleged injury, it would be impossible to trace specifically to the Instant Noodles.  After all, Guttmann admits in his prior filings that he has consumed TFAs in oatmeal, granola bars, Hostess dessert products, tortillas, etc. over at least the last ten years.  *See* RJN, Exhs. 1 to 12.  In light of his consumption of TFAs in numerous other products, Guttmann does not and cannot allege that the amounts of TFAs *in the Instant Noodles* specifically create a credible or substantial risk of any or additional harm.

In *Herrington*, similar claims about supposedly dangerous ingredients in bath products were dismissed on standing grounds.  *See* 2010 WL 3448531, at *3. The district court noted that while the FDA and the Consumer Product Safety Commission had declared these ingredients "cause for concern," the ingredients were not banned.  *See id.*  The court then held that plaintiffs lacked Article III standing because they had not "establish[ed] a credible risk of harm that could suffice as a concrete, imminent injury; the threat of which Plaintiffs complain is too speculative and uncertain to confer Article III standing."  *Id.* at *4; *accord Koronthaly v. L'Oreal, USA, Inc*., No. 07-cv-5588, 2008 WL 2938045, at *5 (D.N.J. July 29, 2008) (holding that because the plaintiff did not complain of any current injuries as a result of the presence of lead in her lipstick and because the future injuries she cited were "too remote and abstract to qualify as a concrete and particularized injury," she lacked Article III standing to bring the case).

The same reasoning applies here.  Guttmann has not alleged that he suffered any adverse health effects from his ten-plus years of consuming TFAs, and it is entirely too speculative and uncertain to conclude he ever will.  Several district courts have reached the same conclusion based on the same or similar allegations regarding various products.  *See Simpson*, 989 F. Supp. 2d at 1022 ("While Plaintiff does present significant evidence of the harmful effects of prolonged

8

consumption of TFAs, she does not allege facts tending to show that such isolated instances of TFA consumption are sufficient to cause the enumerated harmful effects.  Thus, based on the allegations in the FAC, this Court is not convinced that consuming TFAs five times over the period of a year represents a substantial increased risk of harm, much less that the probability of that harm is substantial."); *see also Boysen v. Walgreen Co.*, No. C 11–06262, 2012 WL 2953069, at *1, *7 (N.D. Cal. July 19, 2012) (granting motion to dismiss for lack of standing where plaintiff claimed that fruit juice contained "material and significant" levels of arsenic and lead, but failed to show that the levels actually present in defendant's juice tended to cause physical harm); *Medley v. Johnson & Johnson Consumer Cos., Inc.*, No. 10–cv–02291, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (no standing because "there was no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing.").  Accordingly, Guttmann has not alleged and cannot allege a physical injury in fact.

> ## 2. Any *Increased Risk Of Harm* Or *Financial Loss* Was Not Caused By Nissin Foods' Supposed Unlawful Conduct.

Nor can Guttmann allege an economic injury.  Though he formulaically claims to have "lost money as a result of Defendant's conduct," he cannot allege a causal connection between Nissin Foods' actions and the purported injury, because he bought the Instant Noodles with full knowledge of TFAs and their alleged risks.  It now is settled that a plaintiff cannot manufacture standing through self-inflicted harm.  *See Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1151 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending.").  But that is exactly what Guttmann did here.

Guttmann's alleges buying Nissin Foods' products in late 2011.  Compl. ¶ 56.  By then he already knew, and had known for almost two years, that TFAs

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

9

NOTICE OF MOTION AND MOTION TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

were present in some packaged foods, and that TFAs presented the same health risks he complains about here. In February 2010, Guttmann filed a nearly identical complaint claiming he consumed an unhealthy amount of TFAs in a variety of Quaker Oat products, acknowledging that the source of TFAs in the Quaker brands (and all packaged food) was PHO. RJN, Exh. 13 ¶¶ 20, 24, 56. One month later, he filed an identical complaint against Hostess. *Id.*, Exh. 14 ¶¶ 8, 27, 30.

Guttmann alleges he could not in "the exercise of reasonable diligence" have known the Nissin Foods products he first purchased in 2011 contained TFAs because "the dangers of artificial trans fats were known to Defendant, but not to Plaintiff." Compl. ¶ 70; RJN, Exh. 14 ¶¶ 55, 82; *id.*, Exh. 15 ¶ 64. Given his litigation history, however, that allegation is not merely implausible, it is patently false. And it will not suffice to give him standing. *Clapper*, 133 S. Ct. at 1151.

Guttmann was well aware that Nissin Foods' products contained TFAs, and he bought them anyway. His purported loss of money and any remote and speculative threat of future harm were caused by his decision to purchase the Instant Noodles and not any wrongful conduct by Nissin Foods. Guttmann lacks standing because his purported injuries are not traceable to Nissin Foods' conduct, but his own, and no amendment will change that. His Complaint should be dismissed with prejudice as a result.

### 3. Guttmann's Extensive Knowledge Of TFAs Also Means He Lacks Standing For Injunctive Relief.

A plaintiff's knowledge of the allegedly unlawful conduct precludes standing for injunctive relief under Article III. *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) ("Here, I am limited to only granting damages since the plaintiffs now know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar. They cannot

10

plausibly allege that they would purchase the challenged products in the future if they were properly labeled."); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them. Now they know. There is therefore no danger that they will be misled in the future.") (citations omitted); *Ham v. Hain Celestial Grp., Inc*., No. 14-cv-02044, 2014 WL 4965959, at *6 (N.D. Cal. Oct. 3, 2014) (finding the plaintiff did not have standing for injunctive relief "[b]ecause [Plaintiff] is now aware that the products use SAPP, she cannot allege that she would be fraudulently induced to purchase the products in the future."); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the 'truth' they cannot be further deceived."). Because Guttmann admits he is now fully aware of the alleged unlawful conduct—and in fact he knew before he bought his first Instant Noodles product—his claim for injunctive relief, like his other claims for relief, should be dismissed for lack of standing.

### D. Guttmann Cannot State A Claim Under The "Unfair" Prong Of The UCL For Several Reasons.

#### 1. Guttmann Caused His Own Purported Injury.

To have standing under the UCL, Guttmann must show that he "has suffered injury in fact and has lost money or property as a result of" unfair competition. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; *see also POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 2228 (2014); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802 (2006). "The phrase 'as a result of' in the UCL imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property." *Hall v. Time Inc*., 158 Cal. App. 4th 847, 849 (2008).

1  Guttmann cannot make this causation allegation for the same reasons he cannot

2  meet Article III standing: he purchased Nissin Foods' products with full

3  knowledge that they contained TFAs, and he could have found what he admits are

4  similar products without TFAs.  *Supra* at pp. 9-11.

5          **2.      Guttmann Could Have (Easily) Avoided Consuming TFAs.**

6          "An act or practice is unfair if the consumer injury . . . is not an injury the

7  consumers themselves could reasonably have avoided."  *Daugherty v. Am. Honda*

8  *Motor Co., Inc.,* 144 Cal. App. 4th 824, 839 (2006) (citing *Camacho v. Auto. Club*

9  *of S. Cal.,* 142 Cal. App. 4th 1394, 1403 (2006)).  Here, Guttmann easily could

10  have avoided his alleged injuries.  Once again, he knew at least a year before he

11  purchased Nissin Foods' products about the supposed health risks of TFAs and

12  how to determine whether a product contains even trace amounts of them.

13  Moreover, Guttmann lists 46 market alternatives that do not contain TFAs.

14          Under these allegations, his injuries were easily avoidable and, therefore,

15  not sufficient to state an "unfair" claim:

16              Plaintiff alleges that injury from purchasing and consuming
17              the Contested Pizzas could not have easily been avoided.
                (FAC ¶ 69, ECF No. 13.)  The nutrition facts panels of all of
18              the Contested Pizzas clearly indicate their TFA content,
                however.  (MTD Exs. 1-25, ECF No. 20.)  Moreover,
19              Plaintiff follows this allegation with a list of 18 alternative
20              pizza brands and 165 alternative pizza products that do not
                contain TFAs.  (*Id*. at 14-15, App. B.)  She could have
21              avoided her injury by purchasing one of these TFA-free
22              products instead.  Accordingly, the Court finds that
                Plaintiff's injury from purchasing and consuming the
23              Contested Pizzas could reasonably have been avoided, and
24              therefore this Court **GRANTS** Defendants' motion to
                dismiss this claim
25

26  *Simpson,* 989 F. Supp. 2d at 1026.  Guttmann's "unfair" UCL claim is virtually

27  the same as the UCL claim asserted in *Simpson.*  It should suffer the same fate—

28  dismissal without leave.

Katten
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

### 3.   Guttmann Cannot State An "Unfair" Prong Claim Because Federal Law Permits the Use of TFAs in Nissin Foods' Products.

Under the safe harbor doctrine, courts may not use the UCL's "fairness" prong to impose their own (or Guttmann's) values on conduct that the representative or executive branches of the government have deemed lawful:

> Courts may not simply impose their own notions of the day as to what is fair or unfair.  Specific legislation may limit the judiciary's power to declare conduct unfair.  *If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.*  When specific legislation provides a 'safe harbor,' Plaintiffs may not use the general unfair competition law to assault that harbor.

*Aron*, 143 Cal. App. 4th at 803 (quoting *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)) (emphasis added); *see also McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1387 (2005).

The USDA and FDA permit the use of TFAs in Instant Noodles.  21 U.S.C. § 321(s). [3]  Under both FDA and USDA regulations, TFAs may be included in food products because they are "Generally Recognized as Safe" ("GRAS").  21 C.F.R. § 170.30(c)(1) (1993); *see, e.g.*, 21 C.F.R. §§ 184.1555(c)(2), 184.1472(b); *accord* 9 C.F.R. § 319.702(b) (1978) [4]

Rather than ban TFAs, the FDA and USDA regulations merely require that trans fat, including all TFAs, be disclosed on a label's "Nutrition Facts" panel:

> The declaration of nutrition information on the label and in labeling of a food *shall* contain information about the level of the following nutrients . . .

\*   \*   \*

---

[3]   The FDA regulates foods (unless they contain meat or poultry) under the Federal Food, Drug and Cosmetic Act ("FDCA") (21 U.S.C. §§ 301 *et seq.*); the USDA regulates food products containing meat and poultry under the Federal Meat Inspection Act, 21 U.S.C. §§ 601 *et seq.*, and the Poultry Products Inspection Act, 21 U.S.C. §§ 451 *et seq.*

[4]   Attacking food products that are on the Federal Government's GRAS list is a slippery slope.  What is next for Guttmann?  Suing soda makers for using high fructose corn syrup, or pastry makers for using refined flower and butter?

13

"*Trans* fat" or "*Trans*": A statement of the number of grams of *trans* fat in a serving, defined as the sum of *all* unsaturated fatty acids that contain one or more isolated (i.e. nonconjugated) double bonds in a *trans* configuration, except that label declaration of *trans* fat content information is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content . . . . *Trans* fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero . . . .

21 C.F.R. 101.9(c)(2)(ii) (1993) (emphases added).

The FDA provides a template for the required disclosure of TFAs:



Guidance for Industry: A Food Labeling Guide, L 2 (Sep. 1994; Rev. Apr. 2008; Rev. Oct. 2009);[5] *see also* 21 C.F.R. § 101.9(d)(11) & (12) (1993). The Instant Noodles labels conform to this template. *See Request for Judicial Notice,* Exhs. 1-12. The USDA also recognizes and permits the use of TFAs in meat and poultry products.

Because federal law expressly permits the conduct which Guttmann seeks to deem "unfair," the conduct is covered by a "safe harbor." Guttmann cannot use the UCL to unravel the federal government's decision. Accordingly, his UCL "unfair" claim fails for this additional reason.

---

[5]    Found at: http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocume nts/FoodLabelingNutrition/FoodLabelingGuide/ucm064904.htm

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

E.     **Guttmann Cannot State A Public Nuisance Claim Because He Was Not Specifically Injured, TFAs Are Permitted By Law, And This Claim Is A Miscast Products Liability Claim.**

1.     **Guttmann Cannot Meet The Special Injury Element Because His Alleged Injury Is The Same As Everyone Else Who Purchased The Instant Noodles.**

A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480.  But "[a] private person may [only] maintain an action for a public nuisance, if [the alleged nuisance] is *specially injurious* to himself."  Cal. Civ. Code § 3493 (emphasis added).

To be "specially injured" under section 3493 requires that the plaintiff must have suffered an injury "different from the type of harm suffered by the general public." *Gregory Vill. Partners, L.P., v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 901 (N.D. Cal. 2011).  The plaintiff must "show special injury to himself of a character different *in kind – not merely in degree* – from that suffered by the general public." *Institoris v. City of Los Angeles,* 210 Cal. App. 3d 10, 20 (1989) (emphasis added).

Guttmann cannot meet this element.  He admits he was not specially injured, instead alleging that by "purchasing and/or using the Instant Noodles, *all Class members* were subjected to the same wrongful conduct" as he was, including the potential for physical harm and the loss of money.  Compl. ¶ 74. (emphasis added).  Because his claimed injury is identical to that of the "community" of similarly situated purchasers, Guttmann has not suffered an injury that is *different in kind*, as his nuisance claim requires.  *See Kane v. Chobani, Inc.*, No. 12-cv-02425, 2013 WL 3776172, at *5 (N.D. Cal. July 15, 2013) ("Plaintiffs contend that Defendant's mislabeling of its products causes

15

consumers to consume excess sugar and to purchase a product they would not otherwise purchase.  Plaintiffs have not argued that they would suffer any special injury to themselves of a character different in kind than those suffered by other consumers.") (quotations and citations omitted); *Simpson*, 989 F. Supp. 2d at 1025 ("All consumers who have purchased the Contested Pizzas have 'lost money' by that act in the same manner that Plaintiff did. And doubtless many other parents have fed their children the Contested Pizzas (and likely would feel upset to know about the health consequences detailed in the FAC).  Because Plaintiff has failed to allege sufficient facts to demonstrate a special injury, she lacks standing to bring her public nuisance claim.").

Because Guttmann is unable to plead the requisite special injury, his nuisance claim fails as matter of law and should be dismissed.

### 2.     Because TFAs Are Authorized By Statute, Their Use Cannot Be A Nuisance.

California Civil Code section 3482 provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." As explained above, TFAs are lawful ingredients in food products.  *Supra* at pp. 13-14.  For this additional reason, their use does not constitute a nuisance.

### 3.     Guttmann Asserts A Flawed Products Liability Claim Disguised As A Public Nuisance Claim.

Nuisance claims that allege a product contains a hazardous substance fail as a matter of law because "these allegations sound in products liability, for which 'the law of nuisance is not intended to serve as a surrogate.'"  *See, e.g.*, *Hinds Invs., L.P. v. Angioli*, 445 F. App'x 917, 919 (9th Cir. 2011) (quoting *Modesto Redevelopment Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 39 (2004)).  California law prohibits recovery for a defective product under the guise of a nuisance claim because such recovery "would convert almost every product liability action into a nuisance claim" and "nuisance would become a monster that would devour in one

16

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

gulp the entire law of tort.'" *City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 586 (1994) (citations omitted).

Here Guttmann alleges that Nissin Foods sells products that contain a "dangerous ingredient." Compl. ¶ 90. Under the foregoing authorities, that does not state a nuisance claim. *City of San Diego*, 30 Cal. App. 4th at 586.

**F.    Guttmann Cannot State A Claim For Breach Of The Implied Warranty Of Merchantability Because The Instant Noodles Conformed To Their Labels And Guttmann Knew They Contained TFAs.**

Guttmann bases his implied warranty of merchantability claim on allegations that the Instant Noodles are unfit for their ordinary purpose of consumption because they contain TFAs. Compl. ¶¶ 95-99. Under California Commercial Code § 2314, "[u]nless excluded or modified ([under] Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." A breach of the warranty of merchantability "means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

That is plainly not the case here: the Instant Noodles are food and they serve their ordinary purpose of being eaten. Guttmann does not argue otherwise, he just says the food is not good for you. That is not the same thing as lacking basic fitness for ordinary use. And moreover, the FDA and the USDA disagree with Guttmann, having determined that Nissin Foods' products are safe and pass without objection in the trade. Cal. Com. Code § 2314. Further, the Instant Noodles are adequately contained, packaged, and labeled, and conform to the promises or affirmation of fact made on the container or label. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) (citing Cal. Civ. Code § 1791.1); *see also* Cal. Com. Code § 2313(1)(b) ("Any description of the goods which is made

17

part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").  Nothing more is required.  *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27-28 (D.D.C. 2007) (dismissing implied warranty claim for TFA-containing food because Plaintiff did not allege that food was "in any way unpalatable or that [Plaintiff] suffered any immediate ill effects").

What is more, Guttmann's knowledge of the ingredients, from his own expertise and from the product labels, precludes a finding that the Instant Noodles were unmerchantable.  "When a buyer before entering into the contract has examined the goods or the sample model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."  Cal. Com. Code § 2316.  So even if there were defects in terms of the noodles containing TFAs (and there were not), Guttmann actually knew about them before his purchases.  Accordingly, he cannot state a claim for breach of the implied warranty.[6]

Finally, Guttmann waived any claim he might have had for breach of the implied warranty because he easily could have avoided the supposedly defective products.  The presence of TFAs is disclosed on the Instant Noodles labels.  Guttmann knew about the TFAs but purchased the product anyway.  And, as he alleges in his complaint, he could have avoided them by purchasing any number of substitute products that do not contain TFAs.  *See, e.g., Johnson v. Mars, Inc.*, No. 08-cv-351, 2008 WL 2777063, at *2 (W.D. Wis. July 14, 2008) (reasonable consumer would anticipate Snickers candy bar contains peanuts because peanuts are an ingredient on the label).

---

[6]     This claim fails for the additional reason that Guttmann has not plausibly alleged that consuming the Instant Noodles caused him any harm.  *See Birdsong*, 590 F.3d at 959 (no breach of implied warranty claim where headphones could have, but did not, cause injury and Plaintiff asserted minor modifications would have made them safer).  The presence of a defect, without more, does not establish harm. *See Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908, 917-18 (2001).

18

Katten
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Accordingly, Guttmann has failed to state a claim for breach of the implied warranty of merchantability.

## IV. CONCLUSION.

Guttmann lacks standing and his claims fail as a matter of law. The Court should dismiss the Complaint without leave to amend.

DATED: March 19, 2015                    Respectfully submitted,

                                         **KATTEN MUCHIN ROSENMAN LLP**
                                         Stuart M. Richter
                                         Gregory S. Korman
                                         Andrew J. Demko
                                         Courtnee A. Draper


                                         By:    ____/s/_____
                                                    Stuart M. Richter
                                                Attorneys for Defendant,
                                                Nissin Foods (U.S.A.) Co., Inc.